FILED

2009 May-14  PM 04:23
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **KENNETH TARY CHAMBLEE,** | ] | |
| | ] | |
| **Plaintiff,** | ] | |
| | ] | |
| **v.** | ] | **Case No.:  4:07-CV-2241-VEH** |
| | ] | |
| **ROGER SPARKS, et al.,** | ] | |
| | ] | |
| **Defendants.** | ] | |

## <u>MEMORANDUM OPINION</u>

## I.    INTRODUCTION

Plaintiff Kenneth Tray Chamblee  ("Chamblee") initiated this civil rights case on December 12, 2007, against Defendants Marshall County, Alabama Deputy Sheriffs Roger Sparks ("Sparks") (an arresting officer), Stan Baggett ("Baggett") (an arresting officer), Michael Slate ("Slate") (the jail warden), and Marshall County, Alabama Sheriff Scott Walls ("Sheriff Walls").   (Doc. 1).   By the court's memorandum opinion and order (Doc. 24) entered on July 24, 2008, Defendants Slate and Sheriff Walls were dismissed from the lawsuit on qualified immunity grounds.

Chamblee's complaint as amended includes the following claims against the only remaining defendants, Sparks and Baggett.  Count I makes claims against Sparks for a violation of procedural due process involving false arrest, wrongful incarceration, and illegal seizure of personal property.  (Doc. 20 ¶¶ 18-31).  Count

II makes claims against Baggett for a violation of procedural due process involving false arrest, wrongful incarceration, and illegal seizure of personal property.  (*Id.* ¶¶ 32-45).

Pending before the court is Defendants Sparks's and Baggett's Motion for Summary Judgment (Doc. 30), filed on March 3, 2009.  The parties have provided their evidentiary support and fully briefed the pending motion (*see* Docs. 31-32, 35-41), and it is now under submission.  Upon consideration of the evidence and the parties' arguments, and as explained in this memorandum opinion, Defendants' Motion for Summary Judgment is due to be granted.

## II.   STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000).

The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of

material fact. *Celotex*, 477 U.S. at 323. Once the moving party has met its burden, Rule 56(c) requires the nonmoving party to go beyond the pleadings and, by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *Chapman*, 229 F.3d at 1023; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the nonmovant. *Chapman*, 229 F.3d at 1023; *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *Chapman*, 229 F.3d at 1023.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial. *See Fitzpatrick*, 2 F.3d at 1115-17 (citing *U.S. v. Four Parcels of Real Property*, 941 F.2d 1428 (11th Cir. 1991) (en banc)). If the moving party bears the burden of proof at trial, then it can meet its burden on summary judgment only by presenting positive evidence that demonstrates the absence of a genuine issue of material fact; *i.e.*, facts that would entitle it to a directed verdict if not controverted at trial. *Fitzpatrick*, 2 F.3d at 1115. Once the moving party makes such a showing,

the burden shifts to the nonmoving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways.  First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the nonmoving party will be unable to prove its case at trial.  Once the moving party satisfies its burden using this method, the nonmoving party must respond with positive evidence sufficient to resist a motion for a directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to affirmatively show the absence of any evidence in the record in support of a judgment for the nonmoving party on the issue in question.  This method requires more than a simple statement that the nonmoving party cannot meet its burden at trial but does not require evidence negating the nonmovant's claim; it simply requires the movant to point out to the court that there is an absence of evidence to support the nonmoving party's case. *Fitzpatrick*, 2 F.3d at 1115-16.  If the movant meets its initial burden by using this second method, the nonmoving party may either point to evidence in the court record, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the nonmoving party may come forward with additional evidence

sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. However, when responding, the nonmovant can no longer rest on mere allegations, but must set forth evidence of specific facts. *Lewis v. Casey*, 518 U.S. 343 (1996) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

## III.   STATEMENT OF FACTS[1]

On March 11, 2003, the Marshall County Drug Enforcement Unit arrested Plaintiff Kenneth Chamblee for Unlawful Distribution and Unlawful Possession of a Controlled Substance Crystal Methamphetamine, and booked him into the Marshall County Jail.  AF No. 1.1.[2]  On March 12, 2003, Chamblee was released after posting

---

[1]   Whenever the facts are in dispute, they are stated in the manner most favorable to the non-moving party. *See Fitzpatrick*, 2 F.3d at 1115.  Therefore, these are the facts for summary judgment purposes only.  They may not be the actual facts. *See Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir. 1994) ("'[W]hat we state as 'facts' in this opinion for purposes of reviewing the rulings on the summary judgment motion [ ] may not be the actual facts.'") (citation omitted).

[2]   The designation "AF" stands for admitted fact and indicates a fact offered by Defendants Sparks and Baggett that Chamblee has admitted in his written submissions on summary judgment, in his sworn testimony, or by virtue of any other evidence offered in support of his case.  Whenever Chamblee has adequately disputed a fact offered by Defendants, the court has accepted his version. The court's numbering of admitted facts (*e.g.*, AF No. 1) corresponds to the numbering of Defendants' statement of facts as set forth in Doc. 31 and responded to by Chamblee in Doc. 35.   A number following a decimal point corresponds to the particular sentence within the numbered statement of facts. For example, (AF No. 1.2) would indicate the second sentence of paragraph 1 of Defendants' statement of facts is the

$130,000 bond.  AF No. 1.2.

On June 10, 2003, the Marshal County Sheriff's Department arrested, booked, and released Chamblee for Criminal Non-Support.  AF No. 2.1.  On July 15, 2003, Chamblee was arrested for Giving False Information.  AF No. 2.2.  On July 17, 2003, the District Court of Albertville sentenced Chamblee to twelve months in the Marshall County Jail for Criminal Non-Support and twenty-four months probation. AF No. 2.3.

On July 22, 2003, the Marshall Count Sheriff's Department arrested and booked Chamblee for Receiving Stolen Property.  AF No. 3.  On November 12, 2003, the Grand Jury indicted Chamblee for Unlawful Distribution and Possession of a Controlled Substance, multiple counts of Receiving Stolen Property, and Escape Second and Third.  AF No. 4.

On December 23, 2003, Chamblee was released on probation for his July 17, 2003, sentence for Non-Support.  AF No. 5.  On December 28, 2003, the Douglas City Police Department arrested Chamblee for Failure to Appear, and he was booked in to the Marshall County Jail.  AF No. 6.1.  He was released the following day.  AF No. 6.2.

On January 27, 2004, Chamblee's Bondsman surrendered him back to the

---

subject of the court's citation to the record.

Marshall County Jail.  AF No. 7.1.  Chamblee was released six days later after his bond was reduced.  AF No. 7.2.

On June 5, 2004, the Marshall County Sheriff's Drug Enforcement Unit arrested Chamblee for Unlawful Possession of a Controlled Substance and booked him into the Marshall County Jail.  AF No. 8.1.  After posting bond, he was released the following day.  AF No. 8.2.

On April 8, 2005, Plaintiff Kenneth Chamblee pled guilty to the Class-C felony offense of Unlawful Possession of a Controlled Substance.  AF No. 9.1.  The Marshall County, Alabama Circuit Court sentenced Chamblee to six years but placed him on five years probation, provided he followed the directives of the Court Referral Officer and successfully completed a substance abuse program.  AF No. 9.2.

In December 2005, Sparks and Baggett were investigating Chamblee and Paul Stover ("Stover") for stealing and moving stolen goods.  AF No. 10.1.  During their investigation, Sparks and Baggett went to Chamblee's home and, based upon information given by Chamblee's wife, Michelle, they uncovered a stolen motorcycle on the property.  AF No. 10.2.  Sparks and Baggett checked the motorcycle's VIN number and confirmed that it had recently been reported stolen by one of Chamblee's neighbors.  AF No. 10.3.

Chamblee and Stover arrived on the scene in a Cadillac.  AF No. 11.1.  Sparks

and Baggett checked the Cadillac's VIN number and learned that it was stolen.  AF No. 11.2.

Chamblee told the Deputies that Stover had brought the motorcycle over to his house and informed them that Stover was in possession of methamphetamine.  AF No. 12.1.  Stover was arrested on an outstanding warrant.  AF No. 12.2.  Although Chamblee was a suspect and Sparks and Baggett could have arrested him, they wanted to follow up on the statement he appeared willing to give against Stover.  AF No. 12.3.  Sparks and Baggett told Chamblee that they wanted to question him further about the stolen goods and that he would need to come to the station and give a statement.  AF No. 12.4.

Sparks asked Chamblee about three stolen horse saddles, but Chamblee denied knowing anything about them.  AF No. 13.1.  A few minutes after they left, Sparks and Baggett received a call that Chamblee wanted them to return.  AF No. 13.2. Upon their return, Chamblee produced two of the three stolen saddles and stated that Stover had brought them over.  AF No. 13.3.

Deputy Sparks again told Chamblee he would need to come to the station and give a statement.  AF No. 13.4.  Chamblee left town and never went to the station to give his statement.  AF No. 14.

Deputy Sparks learned from the Marshall County Court Referral Services that

Chamblee had been missing his court-ordered drug tests, that the agency suspected he was using someone else's urine to pass his drug tests, and that the group intended to send a letter to the Marshall County District Attorney requesting a revocation of his probation.  AF No. 15.  On December 13, 2005, the Marshall County Court Referral Services faxed a request to revoke Chamblee's bond/probation to the Marshall County District Attorney.  AF No. 16.

Sparks "later received an Order to Incarcerate [Chamblee] from the District Attorney."  (Doc. 32 at Ex. J ¶ 8).  "A day or so later, while at the Sheriff's Office, Deputy Sparks showed [Baggett] an Order to Incarcerate Chamblee for failing to meet the conditions of his parole."  (*Id.* at Ex. K ¶ 8; *see also id.* at Ex. I at 1, 4; *id.* at Ex L at 1).

On December 16, 2005, Sparks and Baggett received a tip that Chamblee was at his brother's house.  AF No. 18.  Sparks, Baggett, and Lieutenant Messer went to Chamblee's brother's house to arrest him.  AF No. 19.1.[3]  When they arrived, Chamblee's red Chevrolet Blazer was parked in the driveway.  AF No. 19.2.  With Chamblee's brother's consent, the officers entered and arrested Chamblee pursuant

---

[3] Chamblee's efforts to dispute facts 19.1-19.3 are not supported by the record, and in any event are non-responsive to the <u>fact</u> of Chamblee's actual <u>arrest</u>.  (Doc. 35 at 2 ¶ 19 ("The officers could not have arrested Plaintiff Chamblee pursuant to the Order to Incarcerate because no such Order existed.")).

the Order to Incarcerate.  AF No. 19.3.

While passing Chamblee's Blazer, Sparks saw, through the window, an obviously recognizable tool that had been reported stolen from a local business.  AF No. 20.1.  The Blazer was confiscated because it had a switched VIN plate, which indicated that the truck was stolen.  AF No. 20.2.  The Blazer was impounded and numerous stolen items were recovered from inside it.  AF No. 20.3.

The affidavit provided by Chamblee states that he "had not switched the VIN tag [on the Blazer], and that [his] brother had [t]itle to the vehicle."  (Doc. 38 ¶ 3). Attached to Chamblee's affidavit is a "Certificate of Title for a Vehicle" showing Larry Chamblee as the owner of a 1985 GMC (make) Jimmy (model), rather than a Chevrolet Blazer.  (*Id.* at Ex. A).

After Chamblee's arrest, Lieutenant Mercer booked Chamblee into the Marshall County Jail.  AF No. 21.  Because Chamblee's arrest was pursuant to an Order to Incarcerate rather than for probable cause, his status at the jail was not followed up on.  AF No. 22.1.

Ordinarily, when someone is arrested for probable cause, a deputy will follow up to ensure he sees a judge within seventy-two hours.  AF No. 22.2.  Chamblee, however, was arrested pursuant to an Order to Incarcerate, which ordinarily would determine when Chamblee would be brought before a judge.  AF No. 22.3.

Chamblee remained "in the Marshall County jail for 95 days after [his] arrest." (Doc. 38 ¶ 6).  Chamblee was never taken to court for any reason during that time period.  (*Id.*).  The only written documentation that he received pertaining to his arrest was a "Marshall County Sheriff's Office Inmate Booking" sheet.  (*Id.* ¶ 4; Doc. 39 at Ex. B).

Chamblee eventually "wrote a letter to Peggy Masters" in an effort to get a court date.  (Doc. 38 ¶ 7).  Ms. Masters responded in writing on January 9, 2006, and indicated that Chamblee should "check with the Sheriff as to why [he] was in jail." (*Id.*).  Subsequently, Chamblee "sent a Petition for Writ of Habeas Corpus to the Court" concerning his confinement.  (*Id.* ¶ 8).

On March 22, 2005, the circuit court determined that "[t]here [wa]s no [O]rder [to Incarcerate] in [the] file nor any motion for [such an] order" and released Chamblee on his own recognizance.  (Doc. 32 at Ex. I at 3); AF No. 23.  While "Sparks and Baggett concede that they are unable to produce a copy of the Order to Incarcerate[,] they do not concede [] that the Order to Incarcerate did not exist." (Doc. 31 at 9).  Some time after Chamblee's release from jail, he obtained all his personal property that was in the seized Blazer, including clothes, tools, and jewelry. (Doc. 38 ¶ 11.).

11

## IV.   ANALYSIS

### A.   Qualified Immunity

Defendants Sparks and Baggett assert that qualified immunity bars Chamblee's § 1983 claims brought against them in their individual capacities.  "The defense of qualified immunity completely protects government officials performing discretionary functions from suit in their individual capacities unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Cottone v. Jenne*, 326 F.3d 1352, 1357 (11th Cir. 2003) (internal quotation marks and citations omitted).  "To receive qualified immunity, a government official first must prove that he was acting within his discretionary authority." *Id.* at 1357-58.

This is a two-part test.  Under the first step, "the defendant must [prove that he or she was] performing a function that, but for the alleged constitutional infirmity, would have fallen within his legitimate job description." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1266 (11th Cir. 2004).  Next, the defendant must prove that he or she was "executing that job-related function." *Id.* at 1267.

Here, there can be no doubt that making an arrest and securing an arrestee are within the legitimate duties of being a police officer.  *See, e.g., Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (finding that "there can be no doubt" that an officer acted in his discretionary capacity when making an arrest); *Danley v. Allen*, 540 F.3d

12

1298, 1306 (11th Cir. 2008) (finding that jailers were acting within discretionary authority when they administered pepper spray to a plaintiff). Moreover, in opposing summary judgment, Chamblee does not contest that Defendants Sparks and Baggett have shown that they were acting within the scope of their discretionary authority, and thus has conceded this issue. (*See generally* Doc. 36). Accordingly, the court now turns to Chamblee's burden on qualified immunity. "Once a defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that the defendant is not entitled to qualified immunity." *Cottone*, 326 F.3d at 1358.

The Supreme Court has, until recently, required a two-part inquiry to determine the applicability of qualified immunity, as established by *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Under the *Saucier* test, "[t]he threshold inquiry a court must undertake in a qualified immunity analysis is whether [the] plaintiff's allegations, if true, establish a constitutional violation." *Hope v. Pelzer*, 536 U.S. 730, 736 (2002).

If, under the plaintiff's allegations, the defendants would have violated a constitutional right, "the next, sequential step is to ask whether the right was clearly established." *Cottone*, 326 F.3d at 1358 (quoting *Saucier*, 533 U.S. at 201). The "clearly established" requirement is designed to assure that officers have fair notice of the conduct which is proscribed. *Hope*, 536 U.S. at 739. This second inquiry

ensures "that before they are subjected to suit, officers are on notice their conduct is unlawful." *Saucier*, 533 U.S. at 206.

The "unlawfulness must be apparent" under preexisting law.[4]  *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (citations omitted).  Therefore, a temporal requirement exists related to this inquiry.  More particularly, a plaintiff must show that a reasonable public officer would not have believed her actions to be lawful in light of law that was clearly established at the time of the purported violation.  *See Anderson*, 483 U.S. at 639 ("[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the objective legal reasonableness of the action[], assessed in light of the legal rules that were clearly established at the time it was taken[.]") (internal quotations and citations omitted) (emphasis added); *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) ("If the law at that time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation.") (emphasis added); *Brosseau*, 543 U.S. at 198 ("Because the focus is on whether the officer had fair notice that her conduct was unlawful,

_____

[4] Only Supreme Court, Eleventh Circuit, and Alabama Supreme Court cases can "clearly establish" the law in this litigation. *Thomas v. Roberts*, 323 F.3d 950, 955 (11th Cir. 2003) ("As we have stated, only Supreme Court cases, Eleventh Circuit caselaw, and [Alabama] Supreme Court caselaw can 'clearly establish' law in this circuit.") (citation omitted).

reasonableness is judged against the backdrop of the law <u>at the time</u> of the conduct.")

(emphasis added); *see also Johnson v. Clifton*, 74 F.3d 1087, 1093 (11th Cir. 1996)

("We know of no [preexisting] case which might have clearly told Clifton that he

could not take the disciplinary action indicated by an investigation which was

initiated before he even knew about the allegedly protected speech, and in

circumstances where the public concern implication was doubtful.").

The rigid *Saucier* framework was recently made non-mandatory by the

Supreme Court in *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009), in which the

Court concluded that, "while the sequence set forth [in *Saucier*] is often appropriate,

it should no longer be regarded as mandatory." Thus, "judges of the district courts

and the courts of appeals should be permitted to exercise their sound discretion in

deciding which of the two prongs of the qualified immunity analysis should be

addressed first in light of the circumstances in the particular case at hand." *Id.*

Despite the Supreme Court's recent modification of *Saucier*'s analytical

process, the substantive analysis remains unchanged; an officer is entitled to qualified

immunity protection as long as he "could have believed" his conduct was lawful.

*Hunter v. Bryan,* 502 U.S. 224, 227 (1991). Therefore, to overcome Defendants'

claim of immunity, Chamblee must affirmatively demonstrate that "no reasonable

competent officer would have" acted as Defendants did. *Malley v. Briggs,* 475 U.S.

335, 341 (1986).

Regardless of the new-found discretion in applying the *Saucier* framework, the court, in analyzing Chamblee's false arrest and illegal seizure of property claims, elects to follow the traditional approach to the qualified immunity defense first by addressing the constitutionality question and then by focusing upon whether Chamblee has established that Defendants Sparks and Baggett violated clearly established law. As to each separate inquiry, the court concludes Chamblee has not met his burden.

### B.    Application

#### 1.    False Arrest

##### a.    Constitutional Assessment

"Under the Fourth Amendment, an individual has a right to be free from 'unreasonable searches and seizures.'" *Skop v. City of Atlanta*, 485 F.3d 1130, 1137 (11th Cir. 2007). "In Fourth Amendment terminology, an arrest is a seizure of the person, and the 'reasonableness' of an arrest is, in turn, determined by the presence or absence of probable cause for the arrest." *Skop*, 485 F.3d at 1137 (internal citation omitted). "While an officer who arrests an individual without probable cause violates the Fourth Amendment, this does not inevitably remove the shield of qualified immunity." *Skop*, 485 F.3d at 1137. "Thus, even if we determine that the officer did

not in fact have probable cause, we apply the standard of 'arguable probable cause,' that is, whether 'reasonable officers in the same circumstances and possessing the same knowledge as the Defendant[ ] *could have believed* that probable cause existed to arrest.'" *Id.* (citation omitted).

Chamblee was arrested by Sparks and Baggett on the basis of a purported Order to Incarcerate.  However, Sparks and Baggett are unable to produce the actual Order to Incarcerate.  Even so, Defendants contend that "the case at bar does not present a true constitutional violation; instead, the case at bar presents the Deputies' inability to produce the actual paperwork." (Doc. 31 at 9).  Therefore, they initially request that the court "dismiss all claims against them based on the aforementioned evidence showing that they arrested Chamblee pursuant to the Order to Incarcerate."[5] (*Id.*).

Then, recognizing that "granting summary judgment for the aforementioned

---

[5] Defendants do not offer any supporting case law for this proposition and do not otherwise sufficiently develop this argument.  *See Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment.") (citation omitted)).  "[T]he onus is upon the parties to formulate arguments[.]" *Dunmar*, 43 F.3d at 599 (citation omitted).

17

reasons may be beyond this Court's ability under the Rule 56 standard[,]"[6] Defendants alternatively seek a dismissal of "all claims against them because, despite arresting Chamblee pursuant [to] the Order to Incarcerate, they [also] had probable cause to arrest him for receiving stolen goods." (Doc. 31 at 9).  For the purposes of summary judgment, the court will proceed as Defendants have alternatively outlined and evaluate whether qualified immunity applies to them on the basis that they had probable and/or arguable probable cause to arrest Chamblee for receiving stolen property and therefore lawfully could have arrested him on that basis.

Under Alabama law, the crime of receiving stolen property is defined as follows:

(a) A person commits the crime of receiving stolen property if he intentionally receives, retains or disposes of stolen property knowing that it has been stolen or having reasonable grounds to believe it has been stolen, unless the property is received, retained or disposed of with intent to restore it to the owner.

(b) If a person:

(1) On two separate occasions within a year prior to the commission of the instant offense of receiving stolen property is found in possession or control of stolen property; or

---

[6] More precisely, the inability of Sparks and Baggett to produce a copy of the Order to Incarcerate means that a material factual dispute exists over the document's actual existence, which prevents the entry of summary judgment in their favor for arresting Chamblee pursuant to it.

(2) <u>Possesses goods or property which have been recently stolen</u>; or

(3) Regularly buys, sells, uses or handles in the course of business property of the sort received, and acquired the property without making reasonable inquiry whether the person selling or delivering the property to him had a legal right to do so, <u>this shall be prima facie evidence that he has the requisite knowledge or belief</u>.

Ala. Code § 13A-8-16(a)-(b) (emphasis added).

The court now examines the sufficiency of what Defendants rely upon to support their argument that they had probable or at least arguable probable cause to arrest Chamblee for receiving stolen goods. As Sparks and Baggett explain:

Just prior to December 16, 2005, the following facts within the Deputies['] knowledge gave them probable cause to arrest Chamblee for receiving stolen good[s] when they recovered the stolen motorcycle from his home: Chamblee's wife had indicated it was stolen, VIN number confirmed the motorcycle was stolen, the motorcycle had been recently stolen, and the stolen motorcycle was found at his home. Additionally, Chamblee arrived in a stolen car and had two stolen saddles on his property. Thus, the Deputies had probable cause to arrest Chamblee for receiving stolen goods. Subsequently, Chamblee fled rather than making a statement. On December 16, 2005, the Deputies discovered stolen tools in [the] [] Blazer [driven by Chamblee] and [also saw a] switched VIN plate [on the vehicle], which gave them further facts to support probable cause.

(Doc. 31 at 10).

As summarized by the Eleventh Circuit in *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234 (11th Cir. 2003):

19

Probable cause to arrest under federal law exists when an arrest is "objectively reasonable based on the totality of the circumstances." *Lee v. Ferraro*, 284 F.3d 1188, 1195 (11th Cir.2002). "This standard is met when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Id.* (internal quotation marks and citations omitted) (emphasis added).

*McCormick*, 333 F.3d at 1243.   Under a totality of the circumstances, the court does not hesitate to conclude that Sparks and Baggett had <u>at least</u> arguable probable cause to arrest Chamblee for receipt of stolen property.

The distinction between arguable versus actual probable cause is significant because it "'gives ample room for mistaken judgments'" and for "reasonable error[.]" *Gold v. City of Miami*, 121 F.3d 1442, 1446 (11th Cir. 1997) (citations omitted); *see also Scarbrough v. Myles*, 245 F.3d 1299, 1302-03 (11th Cir. 2001) ("Arguable probable cause does not require an arresting officer to prove every element of a crime or to obtain a confession before making an arrest, which would negate the concept of probable cause and transform arresting officers into prosecutors.").[7]

---

[7] Thus, *Scarbrough* forecloses Chamblee's argument that Sparks and Baggett cannot satisfy the probable cause standard due to their failure to fully establish all the elements relating to his suspected criminal activities involving stolen property.  (*See, e.g.*, Doc. 36 at 6 ("[T]he affidavits submitted do not sufficiently identify the alleged owners of the property or the value of the property."); *id.* ("The officers must show facts which indicate that the property was the property of another.") (citing Ala. Code § 13A-8-16(a)-(b)(2))).

Thus, even if a state official acts only "in an *arguably* reasonable way," based upon preexisting law, then qualified immunity protects him.  *See, e.g., Marsh v. Butler County*, 268 F.3d 1014, 1031 n.8 (11th Cir. 2001) ("[I]f a sheriff responds in an *arguably* reasonable way to unsafe jail conditions, the sheriff will avoid suit pursuant to the defense of qualified immunity.") (citation omitted); *see also id.* ("Qualified immunity is meant to allow government officials to act with 'independence and without fear of consequences' when the law is not clearly established.") (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982)).

"Arguable probable cause exists if, under all of the facts and circumstances, an officer reasonably <u>could</u> – not necessarily <u>would</u> – have believed that probable cause was present."  *Crosby v. Monroe County*, 394 F.3d 1328, 1332 (11th Cir. 2004) (emphasis added); *Redd v. City of Enterprise*, 140 F.3d 1378, 1382 (11th Cir. 1998) ("Taking the facts of the case in the light most favorable to the plaintiffs, we conclude that the EPD officers had arguable probable cause to arrest Anderson[8] for disorderly conduct on March 24th, that is, that the officers could reasonably have believed that Anderson's actions on that date violated Alabama's disorderly conduct statute.") (footnote omitted); *Montoute v. Carr*, 114 F.3d 181, 184 (11th Cir. 1997) ("In order

---

[8] Anderson was a traveling minister who admitted "that he was speaking loudly enough to be heard across the street, but not so loudly as to be heard over the noise of passing trucks."  *Redd*, 140 F.3d at 1380.

to be entitled to qualified immunity from a Fourth Amendment claim, an officer need not have actual probable cause but only 'arguable probable cause,' *i.e.*, the facts and circumstances must be such that the officer reasonably could have believed that probable cause existed."). Therefore, because, in a light taken most favorable to Chamblee, a reasonable officer could conclude that he had arguable probable cause to arrest him for receipt of stolen property, qualified immunity must apply to his claim of false arrest.[9]

Additionally, the arguable probable cause determination is made without reference to a particular officer's subjective feelings. As the Eleventh Circuit explained in *Lee*, "[i]n determining whether arguable probable cause exists, '[w]e apply an objective standard, asking 'whether the officer's actions are objectively reasonable . . . <u>regardless of the officer's underlying intent or motivation</u>.'" 284 F.3d at 1195 (emphasis added) (citations omitted). Under this court's assessment, this language in *Lee* means that, even if Sparks's and Baggett's arrest of Chamblee was improper on the basis of the Order to Incarcerate, then qualified immunity still

---

[9]  Chamblee's other arguments offered to challenge Sparks and Baggett's probable cause to arrest Chamblee for receipt of stolen property are unavailing, including the fact that they arrested Chamblee days after the point in which Defendants maintain that they had probable cause to arrest him for receipt of stolen property, and a lack of exigent circumstances. (*See generally* Doc. 36 at 5-7). In any event, Chamblee  completely fails to specifically address the less taxing <u>arguable</u> probable cause standard. (*Id.*).

protects them so long as from an objective standpoint, a "link" exists between the arrest and suspected criminal activity on the part of Chamblee that is arguably supported by probable cause. *Cf. Williamson v. Mills*, 65 F.3d 155 (11th Cir. 1995) ("What was fatally missing from Mills's [*i.e.*, the officer's] knowledge, however, was a link between the suspected criminal activity and Williamson.") (emphasis added);[10] *Childs v. Dekalb County*, 286 Fed. Appx. 687, 697 (11th Cir. 2008) ("The facts in this case, where the defendants admittedly detained the plaintiffs for [merely] writing down Officer Gorman's license plate number in a public parking lot, are materially indistinguishable from *Williamson*.").

The United States District Court for the Middle District of Alabama reached a similar conclusion in *Burdeshaw v. Snell*, 365 F. Supp. 2d 1194 (M.D. Ala. 2005) under very comparable circumstances and this court adopts its reasoning:

> The *Devenpeck* Court then addressed and disposed of a rule espoused by several circuits that required the facts and circumstances giving rise to probable cause to be at least closely related to the charge stated by the police officer. *Id.* Neither Alabama nor the Eleventh

---

[10]    In *Mills*, Williamson was arrested for "[t]aking photographs at a public event" including "some of the undercover officers." 65 F.3d at 158, 156. In rejecting the qualified immunity defense asserted by Mills, the Eleventh Circuit explained that "[t]he mere fact that Williamson's photographs could have been used for unlawful activity-such as carrying out a death threat against Pavan [one of the undercover officers]-is not enough to establish even arguable probable cause for Williamson's arrest unless Mills had some datum to connect Williamson to the death threats or other crime." 65 F.3d at 158.

Circuit ever adopted this rule.  *See United States v. Saunders*, 476 F.2d 5 (5th Cir. 1973) ("When an officer makes an arrest, which is properly supported by probable cause to arrest for a certain offense, neither his subjective reliance on an offense for which no probable cause exists nor his verbal announcement of the wrong offense vitiates the arrest.") quoted in *Hill v. State*, 665 So. 2d 1024 (Ala. Cr. App. 1995) ("If [the officer's] observation of [the arrestee's] conduct was sufficient to supply [the officer] probable cause to arrest [the arrestee] for any chargeable offense, then the probable cause element is qualified") and *Powell v. State*, 548 So. 2d 590, 600 (Ala. Cr. App. 1988) (holding that an officer had probable cause to arrest the plaintiff even though he did not have probable cause to arrest him for the charge stated at the time of the arrest).

Nevertheless, the reasons the Supreme Court gave [in *Devenpeck*] for dismissing this rule should aid the parties in understanding the ruling in this case:

> Such a rule makes the lawfulness of the arrest turn upon the motivation of the arresting officer-eliminating, as validating probable cause, facts that played no part in the officer's expressed subjective reason for making the arrest, and offenses that are not "closely related" to that subjective reason. *See, e.g., Sheehy v. Plymouth*, 191 F.3d 15, 20 (1st Cir.1999); *Trejo v. Perez*, 693 F.2d 482, 485-86 (5th Cir. 1982).  This means that the constitutionality of an arrest under a given set of known facts will "vary from place to place and from time to time," *Whren*, *supra*, at 815, 517 U.S. 806, 116 S. Ct. 1769, 135 L. Ed. 2d 89, depending on whether the arresting officer states the reason for the detention and, if so, whether he correctly identifies the general class of offense for which probable cause exists. An arrest made by a knowledgeable, veteran officer would be valid, whereas an arrest made by a rookie in precisely the same circumstances would not.  We see no reason to ascribe to the Fourth Amendment such arbitrarily variable protection.

* * * * * *

> Those are lawfully arrested whom the facts known
> to the arresting officers give probable cause to arrest.

> *Id.* at 593-94.  Therefore, as long as the facts known to Snell gave Snell
> probable cause to arrest Burdeshaw for some crime, whether Snell had
> probable cause to arrest him for the particular crime stated at the time of
> the arrest is of no legal consequence in this case.

*Snell*, 365 F. Supp. 2d at 1200-01 (emphasis added).   Similarly, because Sparks and

Baggett had arguable probable cause to arrest Chamblee for receipt of stolen property

on December 16, 2005, it is of no legal consequence that they instead arrested him on

an Order to Incarcerate.  Qualified immunity protects them as to Chamblee's false

arrest claim.

### b.    Fair Warning Assessment

A dismissal of Chamblee's false arrest claim against Sparks and Baggett is

alternatively appropriate on qualified immunity grounds because he cannot show that

clearly established law provided them with fair warning that their conduct was illegal.

Put differently, the record on summary judgment, relating to the decision to arrest

Chamblee on the Order to Incarcerate when they had arguable probable cause to

arrest Chamblee on a charge of receipt of stolen property, but did not, falls far short

of showing any apparent unlawfulness at the time of the conduct.  *See Willingham v.

Loughnan*, 321 F.3d 1299, 1301 (11th Cir. 2003) ("The unlawfulness must have been

apparent. . . . [whether through on point binding authority] or a general constitutional rule already identified in the decisional law[.]") (citing *Anderson*, 483 U.S. at 639-40); *see also Brosseau*, 543 U.S. at 198 ("It is important to emphasize that this inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'") (quoting *Saucier*, 533 U.S. at 201).

This fair warning requirement can be met through either (1) pointing to a case with materially similar facts holding that the conduct engaged in was illegal; or (2) demonstrating that a pertinent federal statute or federal constitutional provision is specific enough to demonstrate the conduct was illegal, even in the total absence of case law. *Storck v. City of Coral Springs*, 354 F.3d 1307, 1317 (11th Cir. 2003) (citations omitted). Chamblee is unable to meet either prong. Indeed, as Chamblee even recognizes in urging the court to disregard Sparks's and Baggett's arguable probable cause "to arrest Chamblee for receiving stolen property[,]" "[t]here is no direct case law for this proposition, but the cases cited earlier holding that the failure to make a judicial determination of probable cause within 48 hours should be instructive on this proposition." (Doc. 36 at 5 (emphasis added) (citations omitted)).

Concerning the second method first, this is not an "obvious clarity" case with respect to Sparks's and Baggett's actions. *Vinyard v. Wilson*, 311 F.3d 1340, 1350 (11th Cir. 2002) (footnote omitted). More specifically, the decision of Sparks and

26

Baggett to arrest Chamblee on an Order to Incarcerate (which paperwork they later were unable to produce), when they simultaneously had arguable probable cause to arrest him for receipt of stolen goods, does not present a situation in which a "broad statement[ ] of principle in caselaw [that is] not tied to particularized facts . . . can clearly establish law applicable in the future to different sets of detailed facts."[11] *Vinyard*, 311 F.3d at 1351 (citation omitted).

As for the first fair warning alternative, Chamblee has not provided the court with materially similar controlling case authority establishing the unlawfulness of Sparks's and Baggett's actions.[12]   Relatedly, none of the cases relied upon by Chamblee clearly establishes that his actions, including in particular handing over two of three admittedly stolen saddles to Sparks and Baggett shortly before his

_____

[11] "This case does not present the other kind of 'obvious clarity' case where a 'broad statement[ ] of principle in caselaw [that is] not tied to particularized facts ... can clearly establish law applicable in the future to different sets of detailed facts.'" *Storck*, 354 F.3d at 1307 n.6 (citing *Vinyard*, 311 F.3d at 1351). *Vinyard* explains the contours of this obvious clarity subset as:  "For example, if some authoritative judicial decision decides a case by determining that 'X Conduct' is unconstitutional *without tying* that determination to a particularized set of facts, the decision on 'X Conduct' can be read as having clearly established a constitutional principle:  put differently, the precise facts surrounding 'X Conduct' are immaterial to the violation."  311 F.3d at 1351 (footnote omitted).

[12] The court has not been able to independently locate any such controlling authority either.

December arrest, "did not constitute legally proscribed [] conduct [of receiving stolen property]" under Alabama law.  *Gold*, 121 F.3d at 1446.  In fact, Chamblee fully admits that he was a suspect in Sparks's and Baggett's stolen property investigation and that they could have arrested him on that charge.  AF No. 12.3.

Instead, the thrust of Chamblee's opposition is that the missing and/or non-existent Order to Incarcerate necessarily means that a constitutional violation took place.  This untenable position misses the qualified immunity mark and fails to meet Chamblee's burden in contesting the entry of summary judgment in favor of Sparks and Baggett.[13]

Therefore, given the elastic nature of the arguable probable cause standard to be applied in assessing the constitutionality of their arrest of Chamblee, Sparks and Baggett have, at a minimum, shown  the lack of clarity of the then-applicable law to their actions and, relatedly, Chamblee cannot satisfy the fair warning requirement.  Accordingly, for all these reasons, Chamblee cannot meet the clearly established law/fair warning requirement to the qualified immunity defense on his false arrest claim, and Sparks and Baggett are entitled to summary judgment for this reason as well.

---

[13]  Relatedly, this court is not obligated to independently develop arguments against the application of qualified immunity for Chamblee.  *See Dunmar*, *supra* at 17 n.5.

### 2. Wrongful Incarceration

Chamblee's complaint also states a separate claim for wrongful incarceration. This relates to his incarceration of 95 days and no initial appearance within 72 hours.

### a. Constitutional Assessment

Concerning Chamblee's wrongful incarceration claim, neither side has articulated whose job it is to see that a prompt hearing occurs after a person has been incarcerated and is in county custody. For example, noone has discussed what role, if any, the county jail officials have in keeping track of this information and notifying the court about any prisoners who have been held for an extended period of time without the benefit of a hearing. Similarly, noone has stated who, if anyone, was responsible for checking the contents of Chamblee's court file to verify the existence of the underlying legal documents offered to support the reason behind his incarceration.

While Sparks and Baggett acknowledge that, had Chamblee been arrested pursuant to probable cause, they would have followed up on his status, this does not necessarily mean that they are constitutionally responsible for his extended incarceration, especially one that was undertaken under an entirely separate process, *i.e.*, pursuant to a purported Order to Incarcerate.

Moreover, there is no allegation much less evidence that Sparks and Baggett

were aware of Chamblee's situation and failed to notify the court or take any other corrective steps.  Relatedly, Chamblee does not maintain that Sparks and Baggett violated some county policy on orders to incarcerate in not following up on Chamblee's jailed status or that Sparks or Baggett knew that there was no order to incarcerate.  In sum, the evidence does not show that Sparks and Baggett acted unreasonably, given the context of Chamblee's arrest.

As Sparks and Baggett point out in their reply:

> Neither the evidence supplied by Chamblee nor even his allegations show any malice, wrongdoing, or incompetence by the Deputies. In particular, Chamblee fails [to] provide any evidence showing that the Deputies were personally aware that he had not received a hearing pursuant to the order to incarcerate.

(Doc. 41 at 7); *see also Zatler v. Wainwright*, 802 F.2d 397, 401 (11th Cir. 1986) (per curiam) (recognizing that causation may be shown by personal participation in a constitutional violation).  Accordingly, Chamblee's wrongful incarceration claim fails because he has not shown how Sparks and Baggett engaged in any constitutionally offensive conduct relating to his time spent in jail.

### b.    Fair Warning Assessment

Even assuming that Sparks and Baggett, as the arresting officers, are constitutionally responsible for Chamblee's extended incarceration under the missing/non-existent Order to Incarcerate, qualified immunity still protects them

because Chamblee has not established that they violated any clearly established law.

Put differently, the fact that Sparks and Baggett may have made a mistake in failing

to check on Chamblee after he was arrested and/or to confirm the existence of the

Order to Incarcerate in the case file does not make them liable for his incarceration

unless their inactions are plainly wrong under controlling law.

As Sparks and Baggett further explain in their reply:

> Chamblee's evidence thus falls far short of showing any apparent
> unlawfulness in the Deputies' actions. *See Willingham v. Loughnan*,
> 321 F.3d 1299, 1301 (11th Cir. 2003) ("the unlawfulness must have
> been apparent . . . . [whether through on point binding authority] or a
> general constitutional rule already identified in the decisional law[.]").

(Doc. 41 at 7).  The court agrees.

Chamblee has failed to provide any materially similar controlling case authority

that plainly establishes that Sparks and Baggett had a duty to check the court file

and/or to follow up on the terms of his incarceration when the normal procedure

under an Order to Incarcerate is for the hearing date to be included within it.  Instead,

the case law that Chamblee relies upon relates solely to the principle that "no

probable cause determination [was] made within 48 hours of [his] arrest."  (Doc. 36

at 3 (citing *Blumel v. Mylander*, 954 F. Supp. 1547, 1554, 1559 (M.D. Fla. 1997));

*Powell v. Nevada*, 511 U.S. 79, 83-84 (1994) ("Powell's arrest was not validated by

a magistrate until four days elapsed.  That delay was presumptively unreasonable

under *McLaughlin*'s 48-hour rule."); *County of Riverside v. McLauglin*, 500 U.S. 44, 56 (1991) ("Taking into account the competing interests articulated in *Gerstein*, we believe that a jurisdiction that provides judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement of *Gerstein*.")); *see also  Powell*, 511 U.S. at 80 ("In *Gerstein v. Pugh*, 420 U.S. 103, 95 S. Ct. 854, 43 L. Ed. 2d 54 (1975), we held that the Fourth Amendment's shield against unreasonable seizures requires a prompt judicial determination of probable cause following an arrest made without a warrant and ensuing detention.").

Therefore, if Chamblee had been arrested by Sparks and Baggett pursuant to probable cause as opposed to an Order to Incarcerate, then clearly established law would have required a prompt probable cause determination before a judge. However, Chamblee was instead arrested pursuant to an Order to Incarcerate, which Chamblee admits "ordinarily would determine when [he] would be brought before a judge."  AF No. 22.3.  Despite fully acknowledging this material distinction relating to the manner under which he was arrested, Chamblee has not shown that Sparks's and Baggett's failure to follow up on the duration of his incarceration makes their inactions clearly unconstitutional by, for example, an extension of the probable cause determination rule and/or pursuant to some other line of constitutional reasoning.

Indeed, Chamblee has not cited to a single case, much less a controlling one, which has plainly so held.  Further, Chamblee has not argued that the circumstances presented here fall into the obvious clarity category.  Accordingly, Chamblee has not met his fair warning burden on summary judgment,[14] and qualified immunity protects Sparks and Baggett against Chamblee's wrongful incarceration claim.

### 3.      Illegal Seizure of Personal Property

#### a.      Constitutional Assessment

Chamblee also asserts an illegal seizure of personal property claim against Sparks and Baggett.  This claim relates to the seized Chevrolet Blazer and the personal property contained in vehicle when it was seized.

This court's judicial authority is limited by the Constitution to resolution of "cases" and "controversies."  U.S. Const. Art. III, § 2.  "The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests."  *Brown & Root, Inc. v. Big Rock Corp.*, 383 F.2d 662, 665 (5th Cir. 1967).[15]

"[T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has

---

[14]  *See Dunmar*, *supra* at 17n.5, 28 n.13.

[15]  In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and 3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 180-81 (citing *Lujan*, 504 U.S. at 560-61); *see also Atlanta Gas Light Co. v. Aetna Cas. and Sur. Co.*, 68 F.3d 409, 414 (11th Cir. 1995) (citations omitted) ("The party who invokes a federal court's authority must show, at an 'irreducible minimum,' that at the time the complaint [or claim] was filed, he has suffered some actual or threatened injury resulting from the defendant's conduct, that the injury fairly can be traced to the challenged action, and that the injury is likely to be redressed by favorable court disposition.").

"In addition, the controversy must be 'live' throughout the case; federal jurisdiction is not created by a previously existing dispute." *U.S. Fire Ins. Co. v. Caulkins Indiantown Citrus Co.*, 931 F.2d 744, 747 (11th Cir. 1991) (citing *Chiles v. Thornburgh*, 865 F.2d 1197, 1202 (11th Cir. 1989)). "If the legal or factual basis for the cause of action no longer exists, the case may be moot. In this case, both factual and legal developments create an issue as to whether the entire case or portions of it are moot." *Chiles*, 865 F.2d at 1203. Here, as part of the case or

controversy constitutional assessment, the doctrines of standing and mootness mean that Chamblee cannot pursue his illegal seizure claim against Sparks and Baggett.

Concerning the Blazer, under Chamblee's version of the facts as sworn to in his affidavit, it belongs to his brother.  As a result, "Chamblee lacks standing to allege an illegal seizure claim for the Chevy Blazer because the vehicle is not his property" and relatedly he cannot vicariously assert any constitutional property right in the automobile.  (Doc. 41 at 1-2 (citing *Rakas v. Illinois*, 439 U.S. 128, 133-34 (1978) ("'Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted.'") (citations omitted))); *see also U.S. v. Hunt*, 505 F.2d 931, 938 (5th Cir. 1974) ("Conversely, <u>a defendant cannot claim standing if he neither has a cognizable property interest in the place or thing searched</u>, nor was present at the time of the search.") (citations omitted) (emphasis added); *Friends of the Earth*, 528 U.S. at 181 ("The relevant showing for purposes of Article III standing, however, is not injury to the environment <u>but injury to the plaintiff</u>.") (emphasis added); *Friends of the Earth*, 528 U.S. at 191 ("Standing doctrine functions to ensure, among other things, that the scarce resources of the federal courts are devoted to those disputes in which the parties have a concrete stake.").

Here, Chamblee has disavowed under oath any ownership interest in the seized Blazer under oath.  Further, in opposing summary judgment, he has not even

articulated, much less substantiated how he, as a non-owner, would have a constitutionally cognizable stake in the vehicle.   Accordingly, Chamblee lacks standing to assert any illegal seizure of property claim premised upon the seized Blazer.

As for any claim pertaining to his personal property that was inside the Blazer when it was seized, that purported violation has been rendered moot under Chamblee's version of the facts.  In his affidavit, Chamblee testifies that "[s]ome time ago [he] called and asked the Sheriff for [his] personal property."  (Doc. 38 ¶ 10).  Chamblee then "went to the Sheriff's office and . . . took everything out of the back [of the Blazer]."  (*Id.*).  Chamblee retrieved "all [his] personal property [at that time] which included clothes, tools, and jewelry."  (*Id.*).  Therefore, Chamblee no longer maintains that Sparks, Baggett, or the Sheriff's office, currently improperly has possession of anything belonging to him.  Accordingly, the rest of Chamblee's illegal seizure of personal property claim is due to be dismissed on mootness grounds.

### b.    Fair Warning Assessment

Even if an illegal seizure of personal property constitutional claim were properly maintainable by Chamblee against Sparks and Baggett, then qualified immunity still bars it because Chamblee has not shown how these officers have violated any clearly established law.  In particular, the section of Chamblee's brief in

opposition which addresses qualified immunity makes no attempt to cite to any case law, much less controlling authority, relating to his purported property claim.  (Doc. 36 at 7-8 (discussing false arrest and wrongful incarceration claims only)). Accordingly, summary judgment is alternatively appropriate on Chamblee's illegal seizure of property claim due to his failure to meet his fair warning burden and/or his abandonment of the entire issue.  *See, e.g.*, *Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir. 2000) (failure to brief and argue issue at the district court is sufficient to find the issue has been abandoned); *see also Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1322 (11th Cir. 2001) (finding claim abandoned when argument not presented in initial response to motion for summary judgment); *Bute v. Schuller International, Inc.,* 998 F. Supp. 1473, 1477 (N.D. Ga. 1998) (finding unaddressed claim abandoned); *Dunmar*, *supra* at 17 n.5, 28 n.13.

## IV.   CONCLUSION

Therefore, for the  reasons stated above, Defendants Sparks and Baggett's Motion for Summary Judgment is due to be granted.  A separate order will be entered.

**DONE** and **ORDERED** this the 14th day of May, 2009.

_____
**VIRGINIA EMERSON HOPKINS**
United States District Judge

37